LESLIE H. FAWKES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11305.   Promulgated January 2, 1929.

*Leslie C. Smith, Esq.*, for the petitioner.
*P. M. Clark, Esq.*, for the respondent.

PHILLIPS: The Commissioner determined a deficiency of $7,669.07 in income tax for 1920. The petitioner instituted this proceeding for a redetermination of his liability. Depositions were taken by the petitioner and the proceeding has been submitted upon the pleadings and depositions.

It is first alleged that the Commissioner erred by:

(1) The inclusion of One Thousand Seven Hundred and forty-five and 50/100 ($1,745.50) Dollars profit from the sale of property, which profit was arrived at by the Commissioner through applying theoretical depreciation.

In support of this error the petition alleges the following facts:

The taxpayer was the owner of a piece of property in Minneapolis prior to 1913, which was valued at Fifty Thousand (50,000.00) Dollars in 1913. This property was sold in 1919 for Fifty Thousand (50,000.00) Dollars and was reported by the taxpayer in his return for 1919. The agent added to the taxpayer's return for 1920 the sum of One Thousand seven hundred forty five and 50/100 ($1,745.50) Dollars, being alleged profit for that year. The so-called profit represents the theoretical depreciation sustained.

The answer of the respondent with respect to such allegation of fact reads:

V (1) Admits that the petitioner sold property in 1919 and that the Commissioner included in income for 1920 the amount of $1,745.50 as that part of a payment of $5,000 made in 1920 on the sale price of the said property which represented profit.

As a part of its deposition petitioner offered the petition and answer in the proceeding instituted before this Board by Leslie H. Fawkes, known as Docket No. 21992, for a redetermination of his income liability for 1919. The petition in that proceeding alleges:

(g) That the petitioner sold a building and lease for $50,000.00 cash and notes which had a cash value of their face, in 1919 the year of the sale.

(h) That no portion of the profit is reportable on the installment basis.

The answer in that proceeding, so far as material, reads:

(5) Admits that the petitioner sold a building and lease for $50,000. cash and notes which had a cash value of their face, in 1919 the year of the sale.

No further evidence was introduced. We gather from these pleadings that in 1919 petitioner sold certain property for $50,000 and that the Commissioner has treated the transaction as an installment sale. Under section 1208 of the Revenue Act of 1926 this is proper in certain circumstances. Whether or not such circumstances. exist in the case of this sale is not shown. The burden of proof being on the petitioner, we must affirm the action of the Commissioner.

Petitioner further alleges error by the Commissioner in refusing to allow as deductions the cost of the capital stock of the Minnesota Dry Milk Co., owned by petitioner, and losses alleged to have been sustained on the indebtedness of that company to petitioner. The evidence shows that at some time prior to 1920 the petitioner acquired stock of that company at a cost of $5,295. By 1920 he had also advanced substantial sums to the company. On November 10, 1920, the company accepted a proposition from petitioner, which is incorporated in the following resolution adopted by the stockholders of the company on November 10, 1920:

Moved that the Board of Directors are authorized and directed to accept the proposition made by Mr. Fawkes to sell to Mr. Fawkes, or such other person or corporation as he may direct, all of the real estate, tools and equipment and the plant owned by the Minnesota Dry Milk Company at Anoka, Minnesota, together with the right to operate said plant under the MacLachlan patents and that L. H. Fawkes shall reconvey to the Minnesota Dry Milk Company the patents, formulas and right to processes and formulas for the manufacture of milk powders and other milk and cream products, which patents and formulas were heretofore assigned to L. H. Fawkes as security for moneys due him, and that the proper officers be authorized to execute the necessary contracts or other instruments to carry out such conveyance, it being understood that Mr. Fawkes assumed and agrees to pay all of the obligations of the Minnesota Dry Milk Company, including his mortgage on the plant and moneys loaned by him in consideration of such sale, it being understood that Mr. Fawkes does not agree to pay or assume any obligations except those to himself at a settlement figure in excess of seventy per cent. (70%) of the individual amounts of such liability, it having been made manifest to the stockholders that the proposition submitted involved the acceptance of Seventy-five Thousand Dollars ($75,000.00) and whatever the inventory might be of manufactured products and supplies and automobile equipment; and Mr. Fawkes undertakes to accept the said proposition and liquidate the indebtedness as herein stated.

At that time the indebtedness of the company exceeded the value of its tangible property. At the time petitioner made this offer he contemplated a sale of a substantial portion of such property to the Twin City Milk Producers Association for $75,000. The petitioner operated the business until 1921 when he sold it to the Twin City Milk Producers Association for $75,000. At that time the cash advanced and liabilities assumed by petitioner totalled $121,505.81. In addition he received $15,905.60 from interest and the liquidation of various claims. The company was never liquidated.

The Commissioner determined that the loss was sustained in 1921 and allowed it in that year. We see no error in that decision. Although the company was in financial difficulties in 1920, it was not until 1921 that petitioner disposed of its business and determined his loss. Until then he was operating the business for the benefit of himself and other creditors.

It might be pointed out that if we were to take a different view, we should still have to affirm the Commissioner, for there is no evidence as to whether the stock of this company was acquired prior or subsequent to March 1, 1913, and, if prior, its fair market value; consequently, the amount of the loss, if any, would be unascertainable from the record. Furthermore, it appears from the resolution quoted above that the company retained certain " patents, formulas and rights to processes and formulas for the manufacture of milk powders and other milk and cream products." There is nothing in the evidence which would show what value, if any, these assets had, but it is evident that they were not assigned to petitioner and that they were regarded as of sufficient importance to require their reconveyance from petitioner to the company. The record does not justify us in disturbing the determination of the Commissioner with respect to these issues.

Petitioner claims a loss from investment in stocks of oil companies. The evidence fails to show that such stock became worthless in 1920. It also fails to show whether the purchase was made before or after March 1, 1913, and the fair market value on that date if acquired prior thereto.

Prior to 1920 the petitioner had been engaged in business as the Fawkes Automobile Co. A corporation was organized by the same name with stock of the par value of $100,000 and as of January 2, 1920, petitioner transferred his individual business to this corporation. The corporation issued $75,000 par value of its stock to petitioner. Such stock had a fair market value equal to its par value. The Commissioner computed a profit on this transaction of the difference between the par value of such stock and $56,460.85. How this latter figure was arrived at is not clear. It may be the value at which the assets were carried on the individual books of the business operated by Fawkes or it may be the value at which they were set up on the corporate books. It may be the cost of these assets to Fawkes.

On this transaction the petitioner realized a gain measured by the difference between the value of the stock he received for these assets and the cost of such assets to him, for prior to the enactment of the Revenue Act of 1921 [section 202 (c) (3)] such transactions were treated as sales of the assets for stock of a corporation. *Napoleon B. Burge*, 4 B. T. A. 732; *S. R. Roseberg*, 13 B. T. A. 503. There being

no satisfactory evidence of the cost of the assets to the petitioner, we must accept the basis of $56,460.85 used by the Commissioner. It does appear, however, that the Commissioner was in error in his determination that $75,000 par value of the stock was issued for these assets. On the organization of the corporation, $87,700 par value of stock was issued to petitioner and his family. For this, he transferred the assets of his business and undertook to pay the corporation $14,390.68. The stock issued for the assets of the individual business represented the difference, or $73,309.32. This stock was worth its par value; wherefore it appears that the petitioner realized a gain of $16,948.47 from this transaction, rather than the greater amount which the Commissioner determined.

*Decision will be entered under Rule 50.*